UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GARRETT STEVEN HAMLIN,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 2:15-CV-0331-LRS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 14).

## JURISDICTION

Garrett Steven Hamlin, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on January 13, 2012. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on April 16, 2014 before Administrative Law Judge (ALJ) Lori L. Freund. Plaintiff testified at the hearing, as did Vocational Expert (VE) Daniel McKinney. On September 22, 2014, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 46 years old. He has no past relevant work experience. At the hearing, Plaintiff amended his alleged disability onset date to January 13, 2012, the same date on which his application for SSI benefits was filed. On that date, he was 44 years old.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUE

Plaintiff argues the ALJ erred in finding he did not have a "severe" depression impairment and in discounting Plaintiff's credibility.

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe

impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: diabetes mellitus; cognitive disorder; history of myocardial infarction; and history of pulmonary embolism; 2) Plaintiff's impairments do not meet or equal

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b): he can lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk six hours in an eight hour workday and sit two hours at a time for a total of six hours in an eight hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch crawl, and occasionally climb ladders, ropes and scaffolds; can reach overhead bilaterally frequently and handle or finger frequently; should avoid concentrated exposure to hazardous machines, unprotected heights and operational control of moving machinery other than an automobile; should avoid exposure to extreme heat, wetness and humidity; can understand, remember and carry out simple, routine and repetitive instructions and tasks; can interact superficially with the general public and co-workers, but no tandem tasks; would work best in a low stress environment with only occasional decision-making and occasional changes in work settings; and should avoid any pace work or production work; and 4) Plaintiff's RFC allows him to perform other jobs existing in significant numbers in the national economy as identified by the VE, including weld inspector, hand packager inspector, and garment sorter. Accordingly, the ALJ concluded the Plaintiff has not been disabled at any time since January 13, 2012.

**SEVERE MENTAL IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*.

Plaintiff asserts that had his symptom claims been properly credited, the ALJ would have found that Plaintiff suffered from depression constituting a "severe" impairment. As noted above, a "severe" impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908. In any event, the ALJ did find that Plaintiff suffered from "severe mental impairments," (AR at p. 21), specifically a "severe" cognitive disorder (AR at p. 14), but the ALJ concluded

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

Plaintiff's condition did "not rise to the level of complete disability." Substantial evidence in the record supports that conclusion. A report from Community Health Association of Spokane (CHAS) dated January 30, 2012, indicated "[n]o unusual anxiety or evidence of depression." (AR at p. 718). This was repeated in a report dated June 26, 2012 (AR at p. 721).

Plaintiff underwent a memory assessment by Jonathan W. Anderson, Ph.D., on August 31, 2012. During that assessment, Plaintiff indicated he had last received mental health counseling approximately 15 years ago. (AR at p. 729). Plaintiff described his mood as pretty good and his affect was congruent to that stated mood. (AR at p. 732). Dr. Anderson diagnosed the Plaintiff with Cognitive Disorder NOS (Not Otherwise Specified). (AR at p. 733). Plaintiff demonstrated difficulties on some cognitive tasks which were "more likely than not related to his recent medical events," those being his cardiac arrest in May 2012 and anoxic encephalopathy[1] resulting from that event. (AR at p. 733). According to Dr. Anderson:

> [Plaintiff] demonstrated concrete-level thinking as evidenced by his interpretation of at least one proverb. He provided concrete-level responses to 2 or 3 questions on a similarities task. He appeared to have insight into his condition. His memory is adequate for simple instructions. He sustained attention during the present 120-minute evaluation. He performed adequate on tasks of concentration. His pace was adequate and he persisted on tasks. [Plaintiff] does not appear to be resisting social interaction. It is likely that [Plaintiff] would adapt appropriately to change.
>
> Based on the present evaluation and a review of available records, there does not appear to be a severe mental health condition that would provide a barrier to [Plaintiff] sustaining employment within his physical capabilities. He demonstrated some memory difficulties. To compensate for this, he would benefit from information presented in a list format and/or he is allowed to read material. In addition, he would likely benefit from a work environment that was not overly complex or require him to multi-task.

---

[1] A condition where the brain tissue is deprived of oxygen.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

> When asked what would happen if he was offered a job that started tomorrow, he replied, "It would have to depend on what it was[,] but if it was something I could do[,] I would probably take it." When asked to describe his perfect job, he replied, "It would have to be something that there wasn't many hours a week, part-time. And it would have to be something were there wasn't too much heavy lifting."

(AR at pp. 733-34).

On August 22, October 1 and December 17, 2012, and on January 22, March 19, May 1, July 1 and August 7, 2013, reports from CHAS consistently indicated that Plaintiff was experiencing no unusual anxiety or evidence of depression. (AR at pp. 743, 746, 751, 757, 769, 789 and 798). On September 12, 2013, Plaintiff presented himself at CHAS for an individual therapy appointment related to his substance abuse, specifically alcohol abuse. Notwithstanding an assessment of alcohol dependence, the Plaintiff was assigned a current GAF of 65 indicating "mild" symptoms (depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships.[2]

On October 2, 2013, Plaintiff reported having problems with anxiety. (AR at p. 807). Plaintiff was advised to avoid emotional triggers of anxiety, use relaxation techniques and was put on a trial course of Citalopram. (AR at p. 808). On October 3, 2013, Plaintiff presented for another individual therapy session regarding alcohol abuse. Although Plaintiff was diagnosed with alcohol dependence and "major depression, recurrent, moderate," he was nevertheless again assigned a current GAF of 65. (AR at p. 811). The identical diagnoses were provided on November 5, 2013. (AR at p. 814). On November 26, 2013, Plaintiff reported not having used alcohol in three months, feeling good and doing very well. (AR at p. 821). On December 5,

---

[2] *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR at p. 34).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

2013, it was once again reported that Plaintiff had no unusual anxiety or evidence of depression. (AR at p. 825).

On February 27, 2014, Plaintiff was psychologically evaluated by James E. Bailey, Ph.D.. According to Dr. Bailey, the reason for the referral was as follows:

> He complains of brain disease. He said he had very low blood sugar. . . . He was not taking his medication for diabetes. He was aware that proper glucose level would be needed for brain function. . . . In terms of depression, he said his depression is not bad. He said he has little energy, and his counselor told him that was depression. He said his appetite is good and he sleeps six to eight hours a night.

(AR at p. 857). Dr. Bailey noted that Plaintiff had no history of psychiatric hospitalization and no history of psychological or psychiatric treatment. (AR at p. 857). On mental status exam, Dr. Bailey observed "no strong depressed facies" regarding Plaintiff's mood and affect. Asked why he could not work, the Plaintiff indicated he had a speech impediment and tired easily, had low blood sugar and might have to stop on the job, although he might be able to work part-time. (AR at p. 859). Dr. Bailey diagnosed Plaintiff with alcohol dependence in remission for six months and "[r]ule out cognitive disorder." (AR at p. 859). According to the doctor, the Plaintiff "may have been reduced from some prior level; however, he is generally cognitively intact." (AR at p. 859). In summary, Dr. Bailey stated:

> [A]ctivities of daily living seem mostly independent within his physical ability. Socially, he is cooperative and friendly. He likely could meet the public. He is able to relate inter-actively fairly well. In concentration and persistence, he can do simpler and probably some well-learned multistep (sic) tasks. He may have had some decrease in activity associated with low blood sugar. However, he is fairly cognitively intact. This would be consistent with the notes of the CHAS clinic. In terms of decompensation, there is no evidence of decom-penstation in the past 12 months.

(AR at p. 860).

There is not substantial evidence in the record that Plaintiff suffered from a "severe" medically determinable impairment of depression for a period of 12 months. Furthermore, the record does not indicate Plaintiff suffered unique functional

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

limitations from depression as distinct from the limitations caused by the "severe" mental impairments found by the ALJ. Accordingly, if the ALJ erred in failing to find Plaintiff's PTSD was a separate "severe" impairment, it was a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005).

**CREDIBILITY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

At the hearing, Plaintiff testified the most he would be able to work would be for two hours "mainly" because of his diabetes. (AR at p. 36). He testified he might be able to go three or four hours if it involved sitting down, but he also indicated that he gets low blood sugar crashes "sometimes unexpectedly" and when he does, he needs to lie down and have sugar immediately. (AR at p. 37). According to Plaintiff, he has never heard any of his doctors say he is not compliant with his diabetes regimen (medication and diet). (AR at p. 40). Plaintiff testified that an adjustment

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

in his medication about six months prior to the hearing date (April 2014) "fixed" his low blood sugar problem. (AR at p. 41). Nevertheless, Plaintiff asserts he can still have a low blood sugar crash due to diet and trying to consume enough sugar to avoid a crash and not too much sugar in order to avoid gaining weight. (AR at pp. 44-45).

Plaintiff testified he is fatigued constantly and that almost every day he has to lie down and take naps. (AR at p. 46). Plaintiff testified he takes one or two naps a day lasting at least an hour when he feels like he needs to take a nap. (AR at pp. 55-56). According to Plaintiff, he has insomnia and it is also necessary for him to get up early in the morning to take his medications. (AR at p. 47).

Plaintiff testified he cannot lift anything over 20 pounds (AR at p. 61); can walk three to four blocks in the summer and maybe a couple of additional blocks in the winter (AR at p. 61); and can stand for fifteen to twenty minutes at a time (AR at p. 61). He testified climbing stairs is difficult because of pain (neuropathy) in his feet due to diabetes. (AR at p. 62). Plaintiff indicated he could sit for 10 to 30 minutes depending on the type of chair and then he would need to get up and stretch "just for different reasons." (AR at pp. 66-67). He said he walks two or three times a week about a block or block and a half each way. (AR at p. 68). He denied ever telling any doctor that he exercised daily for a total of 10 to 15 hours a week and belonged to a health club. (AR at p. 68). He said he went bowling once with the residents of his assisted living residence but was sore and tired after that and did not do it again. (AR at p. 69).

The ALJ found Plaintiff's allegation of disability was "contradicted by the fact he has only undergone conservative treatment with diabetic medication, but has often been noncompliant in taking his prescribed medication." (AR at p. 18). Substantial evidence in the record supports that conclusion.

In January 2012, it was reported that Plaintiff's diabetes was well-controlled. (AR at p. 391). On an emergency room visit in March 2012, however, it was

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

indicated that Plaintiff had been out of Metformin[3] for the last several months and therefore, his diabetes was uncontrolled. (AR at pp. 597-98). Plaintiff was given a prescription for Metformin. (AR at p. 598). On another emergency room visit in April 2012, it was noted that Plaintiff's hyperglycemia was "likely secondary to poorly controlled diabetes," the Plaintiff was unsure whether he had been taking his Metformin, and the emergency room physician suspected this was "due to medication noncompliance." (AR at p. 595). Upon his discharge from the hospital in May 2012 following his admission for myocardial infarction and resulting anoxic encephalopathy, it was reported that Plaintiff's diabetes was being managed with oral (p.o.) medications. (AR at p. 608). On June 26, 2012, it was reported that Plaintiff's diabetes was well-controlled. (AR at p. 721). This was also the case on October 3, 2012 (AR at p. 749) and on December 7, 2012 (AR at p. 750), at which time Plaintiff was advised he was not in need of diabetes specialist care as his diabetes was well-controlled. (AR at p. 752). On January 22, 2013, Plaintiff's medications (Lantus[4] and Metformin) were renewed for his "Diabetes Type 2, controlled." (AR at p. 757).

On February 22, 2013, it was reported that Plaintiff went to an area hospital with poorly controlled diabetes. (AR at p. 761). On February 25, 2013, a report indicated that Plaintiff was "refusing the medication" and therefore, Plaintiff was instructed/counseled to take insulin as prescribed, monitor his blood sugar at home three to four times daily and increase the amount of Lantus and insulin he was taking. (AR at pp. 763 and 765).

On March 19, 2013, Advanced Registered Nurse Practitioner Kathryn Sander

---

[3] Oral diabetes medicine that helps control blood sugar levels in people with Type 2 diabetes and is sometimes used in combination with insulin or other medications.

[4] Generically known as insulin glargine.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

who saw Plaintiff at CHAS noted that Plaintiff was doing "quite well," but that he was having a lot of low blood glucose later in the day. (AR at p. 767). In the "Social History" of her report, it indicated there was no history of alcohol use (AR at p. 768), although that was clearly contrary to what was indicated when Plaintiff was seen in the emergency room in the early part of 2012 (AR at pp. 594-98). It was also indicated that Plaintiff had a moderate activity level, that he was a health club member, and that he exercised daily for a total of 10-15 hours (AR at p. 768) which, as noted above, he denied during the April 2014 hearing. It was further indicated that Plaintiff's hobbies included going to church and to the library. (AR at p. 768). The ARNP's assessment was that Plaintiff's diabetes was uncontrolled at that time. (AR at p. 769).

On a follow-up visit on March 27, 2013 to PA-C (Certified Physician's Assistant) Benjamin Moss at CHAS, the Plaintiff reported he was "doing well" on his medications and "[h]is sugars [were] also improved with the recent changes in his diabetes meds." (AR at p. 771). Plaintiff was counseled to take his medications as required. (AR at p. 772). In April 2013, Plaintiff was instructed to take his Lantus at bedtime (AR at p. 789), a change which he testified helped to fix his low blood sugar problem. In August 2013, Plaintiff reported that he was on a "drinking binge" to which he attributed his low blood sugar readings. (AR at p. 796). A report dated August 26, 2013 indicated Plaintiff was being seen after being admitted to the hospital for alcohol withdrawal and advised he had not had any alcohol since August 13. (AR at p. 800). He was referred to outpatient alcohol counseling and instructed to take his diabetes medication as prescribed, monitor his blood sugar one to three times daily, make appropriate dietary changes to control sugars, and exercise at least two to three times a week for 20 to 30 minutes. (AR at. p. 803). On October 2, 2013, it was reported that Plaintiff's diabetes and sugars were under control. (AR at p. 807). On October 3, 2013, Plaintiff advised he was adhering to his medication

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

regime, getting daily exercise and sleeping well. (AR at p. 810). On November 18, 2013, Plaintiff presented for follow-up on diabetes and medications, denied any current problems, reported feeling well and that he was taking his medications as prescribed. (AR at p. 816). On November 26, 2013, Plaintiff was described as doing well and reported he had not used alcohol in three months. He indicated he was feeling good and not craving alcohol. He advised that the assisted living residence he was in provided a diabetes healthy diet as many of the residents had diabetes. (AR at p. 821). On December 5, 2013, Plaintiff indicated he had no recollection of any "lows." (AR at p. 823). The assessment at that time was diabetes with "neurological manifestations." (AR at p. 826). On February 13, 2014, Plaintiff reported that lately his sugars had been very good, but he had been sick the last month and this drove his sugars up. (AR at p. 831).

There are simply no opinions during the relevant period of time from any of the medical providers suggesting that Plaintiff's diabetes physically limited him to an extent greater than that found by the ALJ in her RFC determination. As the ALJ noted, on September 17, 2012, Norman Staley, M.D., reviewed the medical record to date and concluded the Plaintiff was capable of: lifting twenty pounds occasionally and ten pounds frequently; standing or walking for six hours and sitting for six hours in an eight hour workday; limited postural activities except for frequent stooping, crouching and crawling; frequent reaching overhead bilaterally; but preclusion of concentrated exposure to hazards. (AR at p. 18).

Consistent therewith was the disability examination conducted by Thomas Hull, M.D., Olympus Health Services, LLC, on September 24, 2012, which resulted in the following assessment:

> Gait and station were normal. He has normal speech, hearing and vision. Motor exam normal. He has some mild decrease in range of motion in the shoulders. He [complains of] vertigo and tinnitus since his [myocardial infarction]. He can hold and manipulate small objects.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

(AR at p. 740).

In his February 27, 2014 report, Dr. Bailey noted as follows:

> [Plaintiff] has no driver's license but can drive. He is able to do cooking, cleaning and shopping, but where he lives, they do that. He has friends in his girlfriend. He is not assigned any chores where he is. On a typical day, he might sort files or boxes for two hours with his girlfriend. He watches two or three hours of TV. He goes on errands or shopping up to six hours.

(AR at p. 859). Based on this, as well as other evidence in the record regarding Plaintiff's daily living activities, the ALJ rationally concluded that Plaintiff's "physical impairments have reduced his capacity to work, but not to the extent that he is precluded entirely from basic work-related activity." (AR at p. 19).

Likewise, substantial evidence in the record supports the ALJ's RFC determination with regard to the extent of the Plaintiff's mental limitations set forth in that determination. This includes the evidence discussed above regarding the severity of Plaintiff's mental impairments, as well as Plaintiff's hearing testimony in which he indicated Citalopram prescribed for his depression had definitely resulted in improvement and therefore, he felt it was no longer necessary to continue attending counseling sessions for depression. (AR at pp. 70-72).

## CONCLUSION

ALJ Freund rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff is not disabled.

//
//
//
//

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

Defendant's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 13) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___24th___ day of April, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 16**